IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KYLIN NETWORK (BEIJING) MOVIE )
& CULTURE MEDIA CO. LTD, )
                                                        )
             Plaintiff,            )
                                                        )
v.                                                        )    Civil Action No. 3:16CV999–HEH
                                                        )
BENNETT J. FIDLOW *et al.*,      )
                                                        )
            Defendants.      )

## MEMORANDUM OPINION
(Granting in Part and Denying in Part Defendants' Motion to Dismiss)

THIS MATTER is before the Court on Defendants Bennett J. Fidlow and Schroder Fidlow, PLC's (collectively "Defendants") Motion to Dismiss, filed on January 16, 2017. (ECF No. 4.) For the reasons that follow, the Motion to Dismiss will be granted in part and denied in part.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to it. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewed through this lens, the facts are as follows.

The relationship between Kylin, a Chinese company, and Defendants began with Kylin's decision in 2014 to produce a movie about the life of martial arts legend Bruce Lee,

entitled "Birth of the Dragon." (Compl. ¶ 4, ECF No. 1.)[1] Kylin partnered with another company, Bliss Media Limited ("Bliss"), to obtain the movie rights. (*Id.*) Bliss's attorney, Fidlow, drafted the partnership agreement. (*Id.* ¶ 7.) At the time, Fidlow was a member of the defendant law firm, Schroder Fidlow, PLC. (*Id.* ¶ 3.)

After Kylin partnered with Bliss, Fidlow represented both entities in their attempt to obtain the rights to "Birth of the Dragon." (*Id.* ¶ 8.) Kylin entered into a legal services agreement with Fidlow on June 25, 2014. (*Id.*; Compl. Ex. B, ECF No. 1-2.) Despite Kylin and Bliss working together to obtain the movie rights, each had its own individual and competing interests. (Compl. ¶ 9.) However, Fidlow never disclosed to Kylin or Bliss that his representation of them created a conflict of interest, and neither Kylin nor Bliss signed a waiver consenting to joint representation. (*Id.* ¶ 10.)

In his representation of Kylin and Bliss, Fidlow failed to conduct a diligent and comprehensive review of the chain of title of "Birth of the Dragon." (*Id.* ¶ 14.) He negotiated on behalf of Kylin and Bliss to purchase the movie rights from QED Pictures, LLC, ("QED Pictures"). (*Id.* ¶ 12.) But QED Pictures did not own those rights. (*Id.* ¶ 13.) "Birth of the Dragon" was actually owned by two other entities, QED Holdings, LLC and QED Writing, LLC. (*Id.*) Despite QED Pictures's lack of ownership in "Birth of the Dragon," Fidlow facilitated a financing agreement whereby Kylin paid $1 million to QED Pictures for the nonexistent movie rights. (*Id.* ¶¶ 17–18, 20.) Under the impression that it had acquired the rights to "Birth of the Dragon," Kylin paid an additional $1 million to Bliss pursuant to their partnership agreement. (*Id.* ¶ 20.)

---

[1] The Court cites to the paragraphs as numbered in the Complaint and notes that two paragraph are numbered as Paragraph Four.

According to Kylin, while Fidlow was negotiating with QED Pictures, he "actually knew or, alternatively, had constructive knowledge that QED Pictures did not hold the rights which his clients ostensibly purchased." (*Id.* ¶ 15.) In support of this assertion, Kylin alleges that Fidlow had access to documents indicating that QED Pictures did not own the movie rights. (*Id.* ¶¶ 15–16.) Those documents were even referenced in the agreement that he negotiated. (*Id.* ¶ 15.)

Fidlow also failed to provide Kylin with a Chinese translation of the agreement. (*Id.* ¶ 19.) Nor did he fully explain the terms of the agreement to Kylin's principals. (*Id.*)

In February, 2015, Kylin discovered that it had not, in actuality, acquired the rights to "Birth of the Dragon." (*Id.* ¶ 23.) Without the assistance of Fidlow or Bliss, Kylin then entered into an agreement with QED Holdings, LLC to actually obtain the movie rights. (*Id.* ¶ 24.)

On April 2, 2015, without Kylin's knowledge or authorization, Fidlow filed UCC-1 financing statements with the California and Delaware Secretaries of State. (*Id.* ¶ 26; Compl. Ex. D, ECF No. 1-4.) These financing statements indicated that Kylin and Bliss each had a security interest in the movie rights. (Compl. Ex. D.) However, because Kylin and Bliss's original joint attempt to purchase the rights from QED Pictures was ineffective, Bliss never actually had any rights—including a security interest—in "Birth of the Dragon." (Compl. ¶ 27.)

Kylin alleges that Fidlow's filing of the financing statements clouded the title of "Birth of the Dragon," the rights to which Kylin had independently acquired from QED Holdings, LLC. (*Id.* ¶ 32.) Kylin further asserts that in filing the financing statements, Fidlow placed the interests of one client, Bliss, over those of another, Kylin. (*Id.* ¶ 34.)

Once Kylin learned that the false financing statements had been filed, it demanded that Fidlow withdraw them. (*Id.* ¶ 31.) Fidlow refused. (*Id.*) Kylin hired separate counsel who continued to demand that Fidlow withdraw the financing statements and accused him of fraud, malpractice, breach of contract, and breach of fiduciary duty. (Compl. Exs. E, F.) In response, Fidlow threatened to file a bar complaint against Kylin's new attorney. (*Id.*)

As a result of Fidlow's conduct, Kylin filed a three-count Complaint alleging legal malpractice, breach of fiduciary duty, and fraud.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss all three counts of the Complaint.[2] "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds

---

[2] Defendants cite Federal Rule of Civil Procedure 12(f) in their challenge to Count Two's claim of breach of fiduciary duty. Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). While Count Two is arguably redundant, Defendants are in actuality seeking Count Two's dismissal as a matter of law. However, Rule 12(f) "is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." 5C Charles Alan Wright, Arthur R. Miller and Adam N. Steinman, *Federal Practice and Procedure* § 1380 (4th ed. 2015); *GTSI Corp. v. Wildflower Int'l, Inc.*, No. 1:09CV123, 2009 WL 2160451, at *4 (E.D. Va. July 17, 2009); *see also Columbia Gas Transmission, LLC v. 14.96 Acres*, No. 2:14CV27773, 2015 WL 3756710, at *2 (S.D.W. Va. June 16, 2015) ("Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law"). Thus the Court will construe the Motion to Strike Count Two as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Columbia Gas*, 2015 WL 3756710, at *2; *see also* Wright, Miller & Steinman § 1380 ("[T]he technical name given to a motion challenging a pleading is of little importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss the complaint.").

upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

Defendants move to dismiss all three counts of the Complaint. Each will be discussed in turn.

### a. Legal Malpractice

Count One of the Complaint alleges that Fidlow committed legal malpractice. In Virginia,[3] "[a] cause of action for legal malpractice has three separate elements: 1) the existence of an attorney-client relationship creating a duty; 2) a breach of that duty by the attorney; and 3) damages that were proximately caused by the attorney's breach of duty." *Harbeck v. Smith*, 814 F. Supp. 2d 608, 621 (E.D. Va. 2011) (quoting *Williams v. Joynes*, 677 S.E.2d 261, 264 (Va. 2009)).

---

[3] Pursuant to Kylin's legal services agreement with Fidlow, the parties have agreed that any dispute shall be governed by Virginia law. (Compl. Ex. B at 4.)

5

In the Motion to Dismiss, Defendants only challenge whether Kylin has sufficiently plead the second element—breach of a duty.[4] Defendants' central argument is that the Complaint identifies violations of the Virginia Rules of Professional conduct, but that those rules do not "give rise to a cause of action against an attorney." (Def.'s Mem. Supp. Mot. Dismiss 11.) It is true that alleging a violation of the Rules of Professional Conduct is not, in itself, enough to establish a claim of legal malpractice. Va. R. Prof. Conduct Preamble; *Star Broad. Inc. v. Reed Smith Ltd. Liab. P'ship*, No. 1:08-cv-616, 2009 WL 482833, at *10 (E.D. Va. Feb. 24, 2009), *aff'd* 373 F. App'x 407 (4th Cir. 2010). But this does not mean that conduct which violates the Rules of Professional Conduct could never give rise to a malpractice claim. Certainly a plaintiff could plead facts indicating both a violation of the Rules of Professional Conduct and at the same time state a plausible claim for legal malpractice. Kylin has done so.

Kylin's Complaint indicates that Fidlow failed to diligently investigate whether QED Pictures owned the rights to "Birth of the Dragon" before advising Kylin to pay $1 million for those rights. When considered in the light most favorable to Kylin, these facts are sufficient to state a plausible claim for legal malpractice.

In the alternative, Defendants argue that Kylin's legal malpractice claim should be dismissed because Kylin was contributorily negligent. Defendants urge the Court to find, based on the Complaint, that Kylin was contributorily negligent as a matter of law. They

---

[4] Defendants also mention in a footnote that "Kylin has suffered no cognizable damage" as a result of Fidlow's conduct. (Def.'s Mem. Supp. Mot. Dismiss 14 n.2, ECF No. 5.) In support of this proposition, Defendants reference a settlement which they assert has resolved any claim that Kylin may have to the $1 million paid to Bliss. To the extent that this may be true, it is beyond the scope of what the Court may consider at this Rule 12(b)(6) stage. Kylin has sufficiently pleaded that it suffered damages proximately caused by Defendants.

point to the fact that Kylin, whose principals were admittedly not fluent in English, entered into English-language agreements presumably without reading them.

"Contributory negligence is available as a defense in a legal malpractice action." *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp.*, 457 S.E.2d 28, 32 (Va. 1995). If proven, it completely bars a plaintiff's recovery. *Jones v. Meat Packers Equip. Co.*, 723 F.2d 370, 373 (4th Cir. 1983). Generally, the issue of contributory negligence lies squarely in the province of the jury. *Kimble v. Carey*, 691 S.E.2d 790, 796 (Va. 2010). Thus, a court may make that determination only when reasonable minds could not differ. *Id.*

This Court declines to do so here. When construing the facts in the light most favorable to Kylin, the Court cannot find, based on the four corners of the Complaint, that Kylin was contributorily negligent as a matter of law. Reasonable minds could differ as to whether Kylin's reliance on its attorney's representations and advice constitute negligence.

Accordingly, Kylin has pleaded a plausible claim for legal malpractice and Defendants' Motion to Dismiss must be denied as to Count One.

**b. Breach of Fiduciary Duty**

Defendants next seek the dismissal of Count Two, which alleges breach of fiduciary duty. They argue that in order to state a claim for breach of fiduciary duty, Kylin must plead facts showing that Fidlow breached some duty unrelated to his legal representation of Kylin. Defendants assert that Kylin has failed to satisfy that requirement. (Def.'s Mem. Supp. Mot. Dismiss 2–4.)

The Virginia Supreme Court has not squarely addressed this issue, but at least one Virginia trial court has. That court held that when a "[p]laintiff asserts a claim for both legal malpractice and breach of fiduciary duty . . . the claim for breach of fiduciary duty can only

survive . . . if it arises out of an independent act outside of the scope of legal representation." *Oberto v. Grogan*, 88 Va. Cir. 188 (2014). Thus, "the Complaint must allege a separate independent tort, apart from the claim of legal malpractice." *Id.* In Virginia, because legal malpractice is a contract claim, an additional claim for breach of fiduciary duty must be based on something other than a violation of a duty arising under the attorney-client relationship. *See id.*

This rule is consistent with Virginia Supreme Court holdings outside of the legal malpractice context. In *Augusta Mutual Insurance Co. v. Mason*, 645 S.E.2d 290 (Va. 2007), the Virginia Supreme Court addressed the question of whether a plaintiff could recover for a breach of fiduciary duty where the fiduciary duty arose only from the existence of a contractual relationship. The court answered that question in the negative. *Id.* at 295. It affirmed the dismissal of the fiduciary duty claim because the plaintiff "failed to identify the breach of any duty arising from a source other than its contractual relationship with [defendant]." *Id.* at 294.

Accordingly, this Court finds that, under Virginia law, to allege a breach of fiduciary duty, a plaintiff must plead facts showing that the breach "arises out of an independent act outside of the scope of legal representation." *Oberto*, 88 Va. Cir. 188.

Even when viewing the Complaint in the light most favorable to Kylin, it fails to allege that Fidlow breached any duty arising from an act outside the scope of legal representation. The background section of the Complaint—which chronologizes the events surrounding Kylin's attempt to obtain the movie rights—fails to indicate that any of Fidlow's actions occurred outside of the scope of his representation of Kylin.

Kylin attempts to argue in its memorandum that Fidlow's filing the UCC-1 financing statements was a breach of fiduciary duty independent of the attorney-client relationship. (Kylin's Mem. Opp'n Mot. Dismiss 7, ECF No. 10.) However, the structure and language of the claims belies this assertion. The actions which Kylin alleges constitute legal malpractice in Count One, including "[f]iling the false UCC-1s," are repeated verbatim in its breach of fiduciary duty claim. (*Compare* Compl. ¶ 44, *with id.* ¶ 48.) Moreover, Kylin prefaces its breach of fiduciary duty claim with: "[a]*s Kylin's attorney*, Fidlow owed fiduciary duties to Kylin." (*Id.* ¶ 47 (emphasis added).) This directly contradicts Kylin's argument that Fidlow breached a duty existing independent of his role as Kylin's attorney.

Thus, the Complaint makes clear that the sole source of Fidlow's fiduciary duties to Kylin was their attorney-client relationship. This is insufficient to state a breach of fiduciary duty claim under Virginia law. Therefore, Count Two will be dismissed.

**c. Fraud**

The analysis used to evaluate Kylin's claim for breach of fiduciary duty also applies to Kylin's fraud claim alleged in Count Three. Like a breach of fiduciary duty claim, a fraud claim must arise from a source other than the contractual relationship between the parties. *Augusta Mut. Ins. Co.*, 645 S.E.2d at 293–294; *see also Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) ("RMA's allegations of constructive fraud are nothing more than allegations of negligent performance of contractual duties and are, therefore, not actionable in tort. A tort action cannot be based solely on a negligent breach of contract."). While it is certainly possible for a plaintiff to satisfactorily plead both a breach of contract, such as legal malpractice, and a tortious breach of duty, such as fraud, Kylin has failed to do so here. *See id.*

Kylin's fraud claim is based on an allegation that Fidlow knew that QED Pictures was not the rights holder to "Birth of the Dragon," yet he intentionally concealed that fact from Kylin. (Compl. ¶ 52.) The Complaint clearly states, however, that Fidlow's duty to disclose that information was based on his role as Kylin's attorney. (*Id.* ¶ 51.) The Complaint mentions no other source of duty, common law or statutory. Thus, Kylin has failed to allege that Fidlow had a duty to disclose the information to Kylin irrespective of that created by the attorney-client relationship. Accordingly, with its analysis constrained to the four corners of the Complaint, the Court concludes that Kylin has failed to state a claim of fraud. Count Three will be dismissed.

## IV. CONCLUSION

Based on the foregoing, the Motion to Dismiss will be granted in part and denied in part. The Motion will be granted as to Count Two and Count Three, and the claims for breach of fiduciary duty and fraud will be dismissed. The Motion will be denied as to Count One.

An appropriate Order will accompany this Memorandum Opinion.

                                              /s/
                                Henry E. Hudson
                                United States District Judge

Date: March 6, 2017
Richmond, VA