IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| KYLIN NETWORK (BEIJING) MOVIE & CULTURE MEDIA CO. LTD, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 3:16CV999–HEH |
| BENNETT J. FIDLOW *et al.*, ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(Granting Motion to Dismiss Counterclaim)

THIS MATTER is before the Court on Counter Defendant Kylin Network (Beijing) Movie & Culture Media Co., LTD's ("Kylin") Motion to Dismiss, filed on April 25, 2017. (ECF No. 29.) For the reasons that follow, the Motion to Dismiss will be granted.

### I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Counter Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to it. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewed through this lens, the facts are as follows.

The relationship between Kylin, a Chinese company, and Counter Plaintiff, Bennett Fidlow, began with Kylin's decision in 2014 to produce a movie about the life of martial arts legend Bruce Lee, entitled "Birth of the Dragon." (Countercl. ¶ 9, ECF No.

27.) Kylin partnered with another company, Bliss Media Limited ("Bliss"), to obtain the movie rights. (*Id.* ¶¶ 11–12.) Fidlow, in his capacity as Bliss's attorney, drafted the partnership agreement. (*Id.* ¶ 13.)

After Kylin partnered with Bliss, Fidlow represented both entities in their attempt to obtain the rights to "Birth of the Dragon." (*Id.* ¶¶ 19, 24.) He negotiated on behalf of Kylin and Bliss to purchase the movie rights from QED Pictures, LLC ("QED Pictures"). (*Id.* ¶ 24.) As a result of Fidlow's negotiations, on August 6, 2014, Kylin and Bliss entered into a financing agreement with QED Pictures. (*Id.* ¶ 27.) Pursuant to that agreement, Kylin paid $1 million to QED Pictures. (*Id.* ¶ 38.) Kylin also paid an additional $1 million to Bliss for its assistance in obtaining the movie rights. (*Id.* ¶ 39.) However, in February 2015, Kylin discovered that QED Pictures never held any rights to "Birth of the Dragon," and, consequently, Kylin's attempt to purchase those rights was ineffectual. (*Id.* ¶ 41.)

The rights to Birth of the Dragon were actually owned by a separate entity, QED Holdings. (*Id.*) Apparently, QED Holdings' CEO, William Block, had independently created QED Pictures and then negotiated with Kylin and Bliss under the QED name. (*Id.* ¶ 43.) Unbeknownst to Kylin and Bliss, Block had no authority to negotiate the rights to "Birth of the Dragon," and the $1 million payment was sent to an account controlled by Block. (*Id.*)

On April 2, 2015, having learned of the turmoil surrounding QED Holdings and QED Pictures, Fidlow filed UCC-1 Financing Statements with the California and Delaware Secretaries of State. (*Id.* ¶ 44.) These Financing Statements indicated that

2

Kylin and Bliss had a security interest in "Birth of the Dragon." (*Id.*) However, at the time the Financing Statements were filed, Kylin had already independently obtained the movie rights from QED Holdings. (*Id.* ¶ 46.)

On September 8, 2015, Kylin sued Fidlow in Los Angeles County, California, Superior Court. (*Id.* ¶ 51.) However, on September 22, 2016, that court determined that Richmond, Virginia was the proper forum and stayed the case so that it could be refiled there. (*Id.* ¶ 54.) Accordingly, on December 23, 2016, Kylin brought suit in this Court. Kylin alleges that Fidlow committed legal malpractice, breach of fiduciary duty, and fraud by advising Kylin to pay $1 million to QED Pictures for movie rights that it did not own and by filing the Financing Statements, which clouded Kylin's title to "Birth of the Dragon." (*See generally* Compl., ECF No. 1.)

On April 6, 2017, Fidlow filed a Counterclaim against Kylin. (*See generally* Countercl.) He alleges that one of Kylin's managers, James Pang, published defamatory statements about Fidlow to another Kylin manager, Leo Shi Young. (*Id.* ¶ 65.) Young, in turn, allegedly published those same statements to Yiyu Yule ("Yiyu"), a Chinese media publisher.[1] (*Id.*) On December 29, 2017, Yiyu allegedly republished the defamatory statements in an online article. (*Id.* ¶¶ 66–69.)

The Yiyu article, which Fidlow has attached to his Counterclaim, is essentially a news report detailing the factual background of the dispute and resulting litigation

---

[1] Fidlow also appears to allege—without providing additional facts—that two other entities, Kylin Pictures, Inc. and Kylin Pictures International, Inc. (collectively "Kylin Pictures"), are also somehow responsible for the defamatory statements being published to Yiyu. (Contercl. ¶¶ 3, 69.)

between Kylin, Bliss, QED Pictures, and Fidlow. (*See* Countercl. Ex. A, ECF No. 27-1.) The article contains three quotes which it credits to an unnamed "person in charge of Kylin." The three quotes attributable to Kylin include:

> "Conflicts will occur sooner or later with a company that tries to snatch a 'white wolf' with empty hands and just wants to get benefits."
>
> "Wei Han, the person in charge of the overseas-registered Bliss said she was a lineal relative of a founding General of China. In the summer of 2014, she contacted Kylin and said the she had an excellent project at hand, which was about a legendary story of promoting Chinese Kung Fu in San Francisco. She also said that she had an investment of 10 million US dollars, another sum of 10 million US dollars would be raised in China, and then she would also finance 10 million US dollars, for a total of 30 million US dollars."
>
> "It was not until February 2015 (last year) that we found out that the QED was a fake one, not the real copyright holder.["]

(Countercl. Ex. A, at 3–4.) Fidlow does not allege that any of these quoted statements constitute defamation. Rather, he alleges that six other statements in the Yiyu article defame him. These allegedly defamatory statements include:

> 1. Fidlow was involved in a "scam" to "get Kylin into a Trap";
>
> 2. "Fidlow seriously ... infringed upon the interests of Kylin in order to seek benefits [for] Bliss" and "Kylin lost 2 million US dollars in vain, but Bliss made a profit of 1 million US dollars because Fidlow didn't do due diligence on this fake company that would have revealed the truth – neither before nor after Kylin and Bliss negotiated the investment agreement, so Kylin was kept in the dark all the time";
>
> 3. "Bliss was the clear winner behind this absurdity—Why?";
>
> 4. "Kylin had reasons to suspect that Bliss and the attorney Fidlow deliberately concealed the true information of the fake company in the past year and intentionally set a scam to make Kylin suffer a loss of 2 million US dollars in vain, while Bliss received a benefit of 1 million US dollars directly from it";

4

      5. "In the opinion of Kylin, all these actions were aimed at improving the position/interest of Bliss in the entire transaction and help it to become the so-called 'copyright owner', because this is related to the producer's credit in the future movies, and certainly relates to the 1 million US dollars received by Wei Han previously"; and

      6. "Kylin had been led into a trap that was designed carefully with the intention of fraud since June 2014".

(Countercl. ¶ 69.)

Fidlow's Counterclaim includes three counts against Kylin. Count I alleges common law defamation. Count II alleges insulting words, in violation of Va. Code § 8.01-45. Count III, pleaded only in the alternative, alleges a business conspiracy, in violation of Va. Code § 18.2-499.

Kylin has moved to dismiss the Counterclaim in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Both sides have filed memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before it, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

5

which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Kylin moves to dismiss all three counts of the Counterclaim. The Court will address each in turn.

#### a. Defamation

To state a claim for defamation under Virginia law, a plaintiff must establish three elements: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (quoting *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013)).[2] In this case, the Court's analysis begins and ends with

---

[2] Fidlow asserts that Virginia law applies to his defamation claim. But the Court views his argument with skepticism. "[A] federal court exercising diversity jurisdiction applies the choice of law principles of the state where the federal court is located." *Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London, Subscribing to Policy Number: ARTE018240*, 788 F.3d 375, 378 (4th Cir. 2015) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). For tort actions, such as defamation, "Virginia applies the doctrine of lex loci delicti, meaning the law of the place of the wrong governs all matters related to the basis of the right of

6

the first element. Fidlow has simply failed to plead any facts indicating that Kylin published the alleged defamatory statements.

While it is clear that the alleged statements were published by Yiyu in an online article, there is no factual basis for attributing those statements to Kylin. Other than the Counterclaim's conclusory allegation that "the Yiyu Article republishes . . . false and defamatory statements by Kylin" (Countercl. ¶ 69), nothing in the record links Kylin to the alleged statements. The article makes clear that its content is based predominantly on the documents filed in the California litigation. (*See* Countercl. Ex. A, at 5 ("According to the petition . . . ."); *id.* ("According to the statement of Kylin in the petition . . . ."); *id.* at 6 ("The complaint of Kylin indicated . . . ."); *id.* at 8 ("The complaint of Kylin indicates that . . . .").) Moreover, while the article quotes an unnamed "person in charge of Kylin" three times, Fidlow has not alleged that any of those three statements are defamatory. Because the article expressly attributes three statements to Kylin, the Court

---

action." *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006). However, the Supreme Court of Virginia has never addressed how this rule applies in situations where the defamatory content is "published" in multiple jurisdictions, such as on a national television broadcast or, as here, a website that can be accessed worldwide. The Second Restatement of Conflict of Laws accounts for multistate defamation by applying the law of the state with the most significant relationship to the occurrence—typically the state where the defamed individual was domiciled at the time of publication. Restatement (Second) of Conflict of Laws § 150 (Am. Law Inst. 1971). However, Virginia has never adopted this provision of the Second Restatement. In fact, Virginia has expressly rejected the Second Restatement's "most significant relationship test" for multistate tort actions generally. *See Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993). Thus, it is far from clear whether a Virginia court would apply Virginia's substantive defamation law for a statement published on a Chinese website. However, the Court need not predict Virginia's choice of law rule for this narrow issue because, as discussed below, Fidlow has failed to sufficiently plead that the alleged defamatory statements are even attributable to Kylin. The Court is not familiar with any jurisdiction's defamation law that would impute liability on a defendant for a defamatory statement which he did not make.

7

must conclude that the remainder of the article—including the six allegedly defamatory statements—is merely the Yiyu authors' opinion and conclusions.

Accordingly, Fidlow has not and cannot state a claim against Kylin for defamation based on the six statements he has identified from the Yiyu article. Thus, the Court must dismiss Count I of the Counterclaim.

### b. Insulting Words

For the same reason that Fidlow's defamation claim fails, his insulting words claim in Count II must also be dismissed.

Virginia Code § 8.01-45 creates a private cause of action for the use of words "which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Virginia courts interpret this statute as "virtually co-extensive with the common law action for defamation." *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987); *Tweedy v. J. C. Penney Co., Inc.*, 221 S.E.2d 152, 156 n.6 (Va. 1976) ("Under Virginia law an action for insulting words is treated as a common law action for slander or libel . . . .").[3]

Because defamation claims and insulting words claims "must ineluctably rise or fall together," Fidlow's failure to plead facts attributing the alleged statements to Kylin is equally fatal to his insulting words claim. *Id.* at 1284. Therefore, the Court will dismiss Count II.

---

[3] The only distinction between insulting words and defamation actions is that insulting words includes statements made by the defendant to the plaintiff, without publication to a third party. *Potomac Valve*, 829 F.2d 1284 n.9 (collecting cases).

8

### c. Business Conspiracy

In Count III, Fidlow has alleged, in the alternative, that if Pang, Young, and Kylin Pictures were not acting as agents of Kylin, then they all entered into a conspiracy with Kylin to injure Fidlow's business by publishing the allegedly defamatory statements to Yiyu. Fidlow asserts that this conspiracy constitutes a violation of Va. Code. §§ 18.2-499 to -500. However, because Fidlow's conspiracy allegations rely solely on the purported defamatory statements made by the co-conspirators, this claim founders on the same shoals as his others.

To state a claim for violation of Virginia's business conspiracy statutes, a plaintiff must allege "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff." *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) (quoting *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 596 (Va. 1984)).

In Count III, Fidlow only alleges that Kylin participated in a conspiracy "through the publication and republication of false and defamatory statements." (Countercl. ¶ 87.) However, as emphasized above, the Counterclaim is devoid of any facts which could allow the Court to conclude that the statements in the Yiyu article are attributable to Kylin or any of the other alleged co-conspirators.

Moreover, "business conspiracy, like fraud, must be pleaded with particularity" pursuant to Fed. R. Civ. P. 9(b). *Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706, (E.D. Va. 2004); *see also Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 329 (W.D. Va. 2007) ("Plaintiff must plead business conspiracy with particularity

. . . ."). But Fidlow's Counterclaim does not allege "the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (quoting *Lewis v. Gupta*, 54 F. Supp. 2d 611, 618 (E.D. Va. 1999)). He simply states that "Kylin, Pang, Young, and Kylin Pictures combined, associated, agreed or acted in concert together (or attempted to do so) for the express purpose of injuring Fidlow in his business and professional reputation." (Countercl. ¶ 87.) This falls well short of the heightened pleading standard of Rule 9(b). *See Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017) (requiring a plaintiff to plead the circumstances of "time, place, and contents" of the false representations constituting fraud or mistake).

Accordingly, the Court will dismiss Count III.

## IV. CONCLUSION

Based on the foregoing, the Motion to Dismiss will be granted, and Fidlow's Counterclaim will be dismissed.

The face of the Yiyu article—the source of the alleged defamatory statements—belies the notion that those particular statements are in any way attributable to Kylin. Thus, Fidlow could plead no set of facts sufficient to resurrect his claims against Kylin based on those statements. As such, the Counterclaim must be dismissed with prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: June 1, 2017
Richmond, VA